798 P.2d 416

**Timothy James HOVEY, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Norman D. Hall, a judge thereof, Respondent Judge,**

**Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.**

**No. 1 CA–SA 89–276.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 11, 1990.

Dean W. Trebesch, Maricopa County Public Defender by Robert L. Baumann and Paul J. Prato, Deputy Public Defenders, Phoenix, for petitioner.

Jan J. Raven and Anne M. Williams, Deputy County Attys., Phoenix, for real party in interest.

## OPINION

GERBER, Judge.

Petitioner Timothy James Hovey brings this special action seeking relief from the trial court's denial of his motion to dismiss charges brought against him after he had entered a plea agreement. We accept jurisdiction and grant him relief.

## FACTS

Hovey was charged with leaving the scene of a fatal accident after he struck and killed a person with his car. He entered into plea discussions with the state. The ensuing agreement stipulated that he would plead guilty to the offense charged, would receive probation and would pay restitution in an amount not to exceed $10,000. The minimum, presumptive and maximum sentences available for fleeing the scene of a fatal accident at the time were .75, 1.5 and 1.875 years, respectively.[1]

Hovey accepted and signed this agreement. The court accepted Hovey's guilty plea at a routine change of plea hearing.

Six weeks later, on August 9, 1989, the state filed a manslaughter indictment against Hovey based on the same conduct recited above. One week later, Hovey appeared in court to be sentenced on his plea for leaving the scene of a fatal accident. The following exchange occurred during this sentencing hearing:

Ms. Williams: Before going forward with sentencing, I'd like to make clear on the record Mr. Hovey is the subject of new charges that have been filed that stem from the same incident, although unrelated as to the elements of the crime, and that he need be aware of those prior to going through with this sentencing. I believe his defense attorney has informed him of those charges and the ramifications that this change of plea may have regarding those new charges.

Mr. Florence: For the record, if the Court wants me to respond, I can respond.

The Court: Well, you're free to respond. I don't know that's necessary.

---

1. The plea agreement incorrectly stated that the maximum sentence Hovey faced would be 1.9 years. This appears to be a harmless drafting error, as Hovey was told of the correct amount of jail time he faced during his change of plea hearing.

Mr. Florence: I don't think it's necessary. Your Honor, the plea was made with the County Attorney based upon the fact that they could file more serious charges. Part of our plea negotiations was the fact that they were [not][2] going to file. Now the County Attorney's office is speaking out [of] both sides of their mouth. It's a matter of double jeopardy. We'd like to proceed at this time.

Hovey was then sentenced pursuant to his plea agreement to one year incarceration followed by a three-year term of probation.

Hovey subsequently brought a motion to dismiss the August 9th manslaughter charge. At a hearing, he maintained that he entered his plea agreement with the understanding that the state would not bring any additional charges against him for the incident to which he pled. Hovey's attorneys, who participated in the plea negotiations, testified that they too understood that the state, in return for the plea, would not bring any further charges against Hovey:

Ms. Bell: I have a note on the file that I spoke to [the prosecutor] on June 8 of 1989. And I told him that based on what—looking at the discovery and everything, that we would take the deal to plead to the charge. Because he said, "Well, you're not going to get any offers on this case because he did get the deal when we didn't file manslaughter or murder charges on him." And I said I could see what he was talking about and we take the deal, *that he would plead to the charge in exchange for no murder charges being filed against him.*

. . . .

My understanding of the *deal was that our client would plead to the charge in exchange for the fact that they would not file any new charges on him out of this act.*

(Emphasis added.) Even the state lends indirect support to this position. While the prosecutor who handled the plea negotia-

tions testified that he never denied that additional charges would be filed, he admitted that he thought the plea to the original flight charge would be dispositive of the entire case. He stated he withdrew from the case when his office decided to file the additional manslaughter charges.

In an effort to attack Hovey's position at this hearing, the state pointed out that the word "none" had been written on the plea agreement form after "(t)he following charges are dismissed, or if not yet filed, shall not be brought against defendant," and that Hovey had signed this portion of the agreement. Hovey responded that he believed the word "none" simply meant that no additional charges would be filed against him.

The trial court denied Hovey's motion to dismiss. It then entered the following order:

THE COURT FINDING and determining that the Defendant entered into the Plea Agreement with the understanding that no other charges would be filed and this Court being of the opinion that it would be a manifestly [sic] injustice not to permit the Defendant to withdraw from the plea agreement,

IT IS ORDERED permitting the Defendant to withdraw and reinstating the charges previously dismissed or otherwise affected by the Plea Agreement.

The parties are hereby restored to the position they occupied prior to the execution of the Plea Agreement.

Hovey now brings this special action. He challenges the trial court's order on the grounds that it abused its discretion by failing specifically to enforce the original plea agreement. He argues that continued prosecution for manslaughter violates the terms of that agreement and also violates his due process and double jeopardy rights. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In response, the state contends that no promise was ever made to him to refrain from filing additional charges.

**2.** Hovey contends that the word "not" was mistakenly omitted from the transcript. We agree. Adding "not" makes counsel's statement inter-

nally consistent and consistent with the position taken by Hovey throughout the proceedings.

## JURISDICTION

■ The denial of a motion to dismiss is not an appealable order. *United States v. Super. Ct., In and For Maricopa Cty.,* 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). Because a trial on the subsequent charges facing Hovey will not indicate whether the state breached the plea agreement, he has no equally plain, speedy or adequate remedy by appeal. 17B A.R.S. Special Actions, Rules of Proc., Rules 3(c) and 8(a). Furthermore, the question whether specific performance is available for the breach of a plea agreement is purely a question of law resolvable at this stage of the proceedings; a trial on the subsequent charges would produce neither more evidence nor light on this matter. *United States v. Super. Ct., In and For Maricopa Cty., supra* at 269, 697 P.2d at 662. We therefore accept jurisdiction.

## STANDARD OF REVIEW

■ In reviewing the denial of a motion to dismiss, we give deference to a trial court's factual determinations, especially those based on live testimony before the trial judge. *State v. Crotty,* 152 Ariz. 264, 266, 731 P.2d 629, 631 (App.1987). We will not disturb these factual findings unless clearly erroneous. Its legal conclusions, however, are susceptible to reversal if incorrect.

## DISCUSSION

■ A criminal defendant's guilty plea must be voluntary and intelligent. 17 A.R.S. Rules of Crim.Proc., Rule 17.1. An agreement that rests "in any significant degree" on promises made by a prosecutor is deprived of its voluntary and intelligent character if those promises are not fulfilled. *Santobello v. New York, supra.*

■ The record here shows that Hovey believed that as a consequence of his plea, no additional charges would be filed. He consistently maintained from his sentencing hearing onward that the state had promised that no new charges would be brought against him. Both his former attorneys who participated in the negotiated agreement testified that was their expectation as well. The prosecutor, though contending that he did not foreclose subsequent charges, did admit that he believed the original plea was "dispositive" of the entire case. Notwithstanding the ambiguity of the word "none," the plea agreement document also supports this view that no further charges ("none") would be filed for this incident.

The trial court's finding that Hovey entered the plea agreement with the understanding that no other charges would be filed is supported by the record. The state breached its part of the bargain by bringing the subsequent manslaughter indictment. This breach occurred after the trial court had accepted Hovey's plea. This breach alone warrants relief under principles of contract law. The breach violated Hovey's due process rights under the fourteenth amendment to be granted fulfillment of the promises used to elicit his plea. *Santobello, supra; State v. Georgeoff,* 163 Ariz. 434, 788 P.2d 1185 (1990). *See also Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

Double jeopardy principles are also violated here. The critical inquiry in determining whether the prosecution will prove conduct in the manslaughter charge that constitutes an offense for which the defendant has already pled guilty is what conduct the state needs to prove to satisfy that charge. To prove the manslaughter case the prosecution here would necessarily have to re-prove the accident, the death, and the recklessness involved in causing it and fleeing from it. Double jeopardy bars this repeated proof of the same conduct. *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), whose final language is apropos:

> That drunk driving is a national tragedy and that prosecutors are overworked and may not always have the time to monitor seemingly minor cases as they wind through the judicial system do not excuse the need for scrupulous adherence to constitutional principles.

*Id.* 110 S.Ct. at 2087.

This conclusion is consistent with that of the trial court.

## RELIEF

We next must decide the appropriate form of relief. Hovey asks for specific performance of the original plea agreement. The trial court ordered only that he be allowed to withdraw from that plea.

Specific performance is a contract remedy for breached plea agreements because those agreements are contractual in nature. *United States v. Packwood,* 687 F.Supp. 471 (N.D.Cal.1987). Specific performance, as an equitable remedy, is available where the remedy at law is inadequate. Dobbs, *Remedies* § 2.5 (1973). A contractual remedy is adequate if it places the non-breaching party in as good a legal position as that party would have enjoyed had the contract been performed. *Dobbs, id.* at § 12.1.

Here, the trial court order that Hovey be allowed to withdraw his plea is inadequate. It does not put Hovey in the same position as if the plea agreement had been performed. Vacating the plea exposes him to the same additional manslaughter charge already filed against him. As such it deprives him of the benefit of his plea bargain by exposing him to an additional, more serious charge. Returning Hovey to his position prior to the plea is no relief at all. Specific performance provides the only appropriate relief.

Specific performance of a plea agreement is available after the agreement is accepted: "If defendant learns of the breach *at or before sentencing,* he may object and move to withdraw from the plea agreement, ... or seek specific enforcement of the agreement." *Georgeoff,* 163 Ariz. at 437, 788 P.2d at 1188 (citation omitted) (emphasis added).[3] *See also State v. Romero,* 145 Ariz. 485, 702 P.2d 714 (App.1985).

## CONCLUSION

Hovey is therefore entitled to have his original plea agreement specifically enforced. Since withdrawal from it is an inadequate remedy, we order that the trial court specifically enforce the original plea agreement and dismiss the manslaughter charge brought after acceptance of that plea.

CONTRERAS, P.J., and McGREGOR, J., concur.

---

3. The sentence agreed upon in a plea agreement may not be specifically enforced. A court may accept a negotiated plea agreement yet reject the proposed sentence. *Dominguez v. Meehan,* 140 Ariz. 329, 681 P.2d 912 (App.1983). A defendant may then withdraw from his plea. *Id.*