STATE of North Dakota, Plaintiff and Appellee,

v.

Darrell ROBIDEAUX, Defendant and Appellant.

Cr. No. 910123.

Supreme Court of North Dakota.

Oct. 7, 1991.

Sonja Clapp, Asst. State's Atty., Grand Forks, for plaintiff and appellee.

Pearson, Christensen, Larivee and Fischer, and John E. Widdel, Jr., Grand Forks, for defendant and appellant, argued by Alan J. Larivee, Grand Forks.

ERICKSTAD, Chief Justice.

The defendant, Darrell Robideaux, appealed from the order of the District Court for Grand Forks County denying his motion to dismiss the charge against him based upon the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We dismiss the appeal.

On March 12, 1991, Robideaux entered a plea of guilty to a violation of section 39–08–04 of the North Dakota Century Code of failing to report and leaving the scene of an accident.[1] The plea for violation of 39–08–04, N.D.C.C., was entered in Grand Forks County Court. Robideaux was also

---

1. Section 39–08–04, N.D.C.C., reads:

"39–08–04. *Accidents involving death or personal injuries—Penalty.*

1. The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 39–08–06. Every such stop must be made without obstructing traffic more than is necessary.

2. Any person failing to stop or to comply with said requirements under such circumstances is guilty of a class A misdemeanor.

3. The commissioner shall revoke the license or permit to drive or nonresident operating privilege of a person convicted under this section."

charged on the 3rd day of January, 1991, in the District Court for Grand Forks County with manslaughter pursuant to section 12.1–16–02, N.D.C.C.[2] He moved, in the district court, to dismiss the manslaughter charge based on double jeopardy. The district court denied Robideaux's motion and this appeal followed.

■■■ This Court's initial inquiry must be whether or not there is jurisdiction to hear this appeal. Section 29–28–06, N.D.C.C., sets forth the statutory basis for appeal.

"An appeal may be taken by the defendant from:

1. A verdict of guilty;

2. A final judgment of conviction;

3. An order refusing a motion in arrest of judgment;

4. An order denying a motion for a new trial; or

5. An order made after judgment affecting any substantial right of the party."

A review of section 29–28–06, discloses that there is no provision authorizing appeals from a denial of a defendant's motion to dismiss the prosecution against him. *See State v. Johnson*, 142 N.W.2d 110 (N.D.1966). The right of appeal is purely statutory in this state. *City of Riverside v. Smuda*, 339 N.W.2d 768, 769 (N.D.1983). Without statutory authorization to hear an appeal, this Court will on its own motion take notice of the lack of jurisdiction. *Id.* Thus Robideaux's appeal must be dismissed.

However, in the interests of justice, we deem it appropriate to briefly discuss the issue of when and how the issue of double jeopardy may be raised.

■■■ The Fifth Amendment to the United States Constitution declares, in relevant part, "nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb." This has been interpreted to protect, among other things, the "risk" of double conviction. *Abney v.*

*United States*, 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651, 661 (1977), citing *Price v. Georgia*, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970). Recognizing that the Fifth Amendment protects against the "risk" of double conviction as well as double conviction in fact, the Court, in *Abney*, went on to state:

"Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs."

*Abney*, 431 U.S. at 662, 97 S.Ct. at 2041. However, as *Abney* noted at the outset, there is no general constitutional right to an appeal. *Id* at 656, 97 S.Ct. at 2038. "The right of appeal, as we presently know it in criminal cases, is purely a creature of statute; in order to exercise that statutory right of appeal one must come within the terms of the applicable statute." *Id.* at 656, 97 S.Ct. at 2038. In *Abney*, the Court was construing the jurisdictional provisions of 28 U.S.C. Section 1291. Having previously determined that section 29–28–06, N.D.C.C., does not authorize appeals such as Robideaux's, we note in passing that there are some other avenues for seeking immediate review. (*See* Chapters 32–32 through 32–35, N.D.C.C., dealing with special proceedings including writ of certiorari, mandamus, and prohibition.) It is the opinion of this Court that these other means of review adequately protect a defendant's interest against being placed in the "risk" of double jeopardy.

Additionally, for the sake of judicial economy, we take this opportunity to com-

---

**2.** Section 12.1–16–02, N.D.C.C., reads:

"12.1–16–02. *Manslaughter.* A person is guilty of manslaughter, a class B felony, if he recklessly causes the death of another human being."

ment on the double jeopardy issue raised by Robideaux. It has been urged that the recent Supreme Court case of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), expanded on prior double jeopardy jurisprudence and that, therefore, this Court's holdings in such cases as *State v. Weisz*, 356 N.W.2d 466 (N.D.1984), are no longer controlling. In *Grady*, the United States Supreme Court expanded its double jeopardy analysis by holding that the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution "bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. 508, ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564.

■ As the Court in *Grady* noted, however, it is not an "actual evidence" or "same evidence" test. *Id.* The crucial question is what conduct the State will prove, not what evidence the State will use. The facts in *Grady* involved a traffic accident that resulted in a death. The defendant in *Grady* was charged and plead guilty to the offenses of driving while intoxicated and failing to keep to the right of the median. The defendant was then later charged with reckless manslaughter, second-degree vehicular manslaughter, and criminally negligent homicide for the death that occurred. The Court in *Grady* noted that the prosecution, by its bill of particulars, intended to prove the various offenses by showing that the defendant was driving while intoxicated, that he crossed the median, and that he was driving at an excessive speed considering the weather conditions.[3] This, the Court held, was impermissible, as to establish an essential element of the crime charged, the State would be proving the "entirety of the conduct for which [the defendant] was [already] convicted."[4] *Grady*, 495 U.S. 508, ——, 110 S.Ct. 2084, 2094, 109 L.Ed.2d 548, 565–566. The Court in *Grady*, however, noted that a subsequent prosecution would not be barred "if the bill of particulars revealed that the State would not rely on proving the conduct for which [the defendant] had already been convicted (*i.e.*, if the State relied solely on [the defendant's] driving too fast in heavy rain to establish recklessness or negligence)."[5] *Grady*, 495 U.S. 508, ——, 110 S.Ct. 2084, 2094, 109 L.Ed.2d 548, 566.

■ In the case before us, the conduct underlying Robideaux's prior conviction un-

3. The criminal "Information" against Robideaux reads in relevant part:

"That on or about the 25th day of August, 1990 within the County of Grand Forks in the State of North Dakota, one DARRELL ROBIDEAUX did commit the crime of MANSLAUGHTER,

by then and there recklessly causing the death of one Brent Fuller. That Darrell Robideaux operated a 1986 Corvette automobile bearing North Dakota license # BRN 381 in such a manner as to recklessly cause the death of Brent Fuller. Darrell Robideaux operated the motor vehicle as it struck Brent Fuller approximately 6/10 of a mile North of Gateway Drive on 42nd Street in Grand Forks County, North Dakota on the above date at approximately 1:30 a.m. This incident causing the death of Brent Fuller."

In establishing the factual basis for the taking of Robideaux's plea of guilty to the crime of leaving the scene of an accident, the State established in relevant part:

"[O]n the 25th day of August, 1990, in Grand Forks, the defendant was operating a motor vehicle—I believe it was on 42nd Street North—at about 1:30 a.m. In the course of

the operation of the vehicle, he was involved in a reportable accident which consisted of a collision or he struck a pedestrian, one Brent Fuller. The pedestrian was fatally injured and therefore became reportable."

It is important to note that the criminal "Information" against Robideaux makes no reference whatsoever to his conduct of leaving the scene of an accident.

4. The only overlap between the manslaughter charge and the crime of leaving the scene of an accident is that for both, the prosecution asserts that Robideaux drove a vehicle which struck the deceased. However, Robideaux was not convicted of "striking a pedestrian with his vehicle." Robideaux was convicted of leaving the scene after having done so.

5. In *Grady*, any prosecution which attempted to use the fact that the defendant was driving too fast in the rain would have to show that the defendant was "operating a motor vehicle." Likewise, the earlier convictions for drunk driving and crossing the center median would necessarily have to show that the defendant was "operating a motor vehicle." However, the "en-

der section 39–08–04, N.D.C.C., was that of unjustifiably leaving the scene of an accident that involved injury or death. There is no evidence that this conduct of leaving the scene is to be used to prove any of the elements of manslaughter.[6] In *Grady*, the State sought to prove that the defendant in that case was reckless by his driving in an intoxicated condition and by his crossing the center median. The conduct of leaving the scene of an accident doesn't prove that Robideaux was reckless in driving. Likewise, the conduct of leaving the scene of an accident doesn't prove the element of causation. There is nothing which indicates that the prosecution is going to show that the death occurred *because* Robideaux left the scene of the accident. In a real sense, the two crimes are transactionally separate and distinct. The crime of leaving the scene of an accident can only occur after an accident has occurred. Furthermore, the crime of leaving the scene of an accident without reporting can occur whether or not anyone was at fault regarding the accident in the first instance. It could be argued that the only way a conviction for leaving the scene of an accident could bar a subsequent prosecution for manslaughter would be if the very reckless behavior that caused the death of another was the failure to render aid pursuant to section 39–08–06, N.D.C.C., which section 39–08–04 incorporates by reference. The fact that the State may well prove that there was an accident resulting in death for both offenses is not determinative of the issue. As the Court in *Grady* put it, "the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding." *Grady*, 495 U.S. 508, ——, 110 S.Ct. 2084, 2093, 109 L.Ed. 548, 564. Thus, if the issue were appropriately before us, we would conclude that the conduct underlying Robideaux's conviction for leaving the scene of an accident is not the same conduct that the State will rely on to prove the elements necessary to support a manslaughter conviction.

Having earlier decided herein that Robideaux's appeal is not statutorily authorized, the appeal is dismissed.

GIERKE and VANDE WALLE, JJ., concur.

MESCHKE and LEVINE, JJ., concur in the result.

---

tirety of the conduct for which the defendant was already convicted was not that of "operating a motor vehicle." The defendant in *Grady* was convicted of operating a motor vehicle while intoxicated, and crossing the center line while operating a motor vehicle. Thus, even though the act of driving too fast under the weather conditions was transactionally the same and necessarily involved some identical actions, the State was free to use it to prove recklessness on the part of the defendant.

**6.** Although neither party cited the Court of Appeals of Arizona case of *Hovey v. Superior Court*, 165 Ariz. 278, 798 P.2d 416 (App.1990), which involved virtually identical facts to this case, we feel constrained to briefly comment on it.

In *Hovey*, the defendant, pursuant to a plea agreement, plead guilty to leaving the scene of accident involving death. Evidence indicated that, as part of the plea agreement, the State agreed to forego prosecution of any other charges. However, the State subsequently charged the defendant with "Manslaughter." The Arizona Court of Appeals held that the State had breached it's plea agreement with Hovey in that it had agreed not to pursue any other charges. The Court thus specifically enforced the plea agreement. Accordingly, we view the double jeopardy language in *Hovey* only as dictum. There is very little in *Hovey* that could be considered rationale for its dictum. In any event, we find it unconvincing.